954 F.2d 990
 16 UCC Rep.Serv.2d 1235
 James R. HARRIS, Jr.; Sharon E. Harris; J. Wayne Harris;
Gail L. Harris; Christian S. Hutter; Helen C. Hutter;
Beverly S. Hutter, Jr.; Katherine C. Hutter; H. H.
Frazier, Plaintiffs-Appellants,
v.
DIAL CORPORATION, Defendant-Appellee.
 No. 91-2556.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 31, 1991.
Decided Jan. 24, 1992.
 
 1
 Robert Cornelius Wood, III, Edmunds & Williams, P.C., Lynchburg, Va., argued (Rayner V. Snead, Jr., Kevin L. Cash, Edmunds & Williams, P.C., Lynchburg, Va., on the brief), for plaintiffs-appellants.
 
 
 2
 Michael Alan Cleary, Woods, Rogers & Hazlegrove, Roanoke, Va., argued (Frank K. Friedman, Woods, Rogers & Hazlegrove, Roanoke, Va., on the brief), for defendant-appellee.
 
 
 3
 Before HALL and MURNAGHAN, Circuit Judges, and YOUNG, Senior District Judge for the District of Maryland, sitting by designation.OPINION
 
 JOSEPH H. YOUNG, Senior District Judge:
 
 4
 This case arises out of a dispute between two parties claiming a right to a company's accounts receivable in satisfaction of debts owed by the company to each of the parties. The issue presented on appeal is whether the defendant has a right to offset its accounts receivable against the accounts receivable related to transactions between the defendant and the business held by the plaintiffs. The district court held that there was one agreement between the defendant and the business held by the plaintiffs, and that the defendant, therefore, had a right of set-off under the applicable section of the Uniform Commercial Code ("UCC"). Consequently, the court granted the defendant's motion for summary judgment. Finding no error, we affirm.
 
 RELEVANT FACTS
 
 5
 Plaintiffs are stockholders in the Lynchburg-Phoenix Group, which in turn was a stockholder in Brewster of Lynchburg, Inc., d/b/a Brewster Plastics ("Brewster"). Brewster was a company which manufactured, among other things, plastic bottles. The defendant, Dial Corporation ("Dial") is a manufacturer of household supplies.
 
 
 6
 Dial approached Brewster in April, 1988 with a proposal that Brewster manufacture plastic bottles for use in Dial's Virginia plant. Brewster agreed, and they encapsulated their agreement in a purchase order. However, Brewster was unable to get the resin necessary for the manufacture of the bottles. Dial had available to it an allocation of resin, so it contracted with its supplier to buy the resin and resell it to Brewster. Dial and Brewster executed a change order as an addendum to the purchase order, which included agreements pertaining to both the manufacture of bottles and the supply of resin. Dial became Brewster's largest customer as the result of this agreement. Brewster began manufacturing bottles for Dial in June or July, 1988.
 
 
 7
 Brewster, needing additional capital for its business, borrowed money from Chesapeake Financial Corporation ("Chesapeake") and also obtained a line of credit from Chesapeake. Brewster's accounts receivable and inventory served as security for the loan; the loan was guaranteed by the plaintiffs.
 
 
 8
 When Brewster fell behind in its payments to Dial for the resin in August, 1988, Dial proposed a set-off arrangement, whereby the amount Brewster owed to Dial for resin was offset against the amount Dial owed to Brewster for bottles. Brewster refused to agree to the set-off agreement and in September, 1988, Brewster and Dial implemented a payment schedule to reduce Brewster's debt to Dial; the goal of the plan was to ensure that Brewster owed Dial no more than $20,000 at any one time. Brewster complied with the payment plan for several weeks but soon fell behind in its payments.
 
 
 9
 In the meantime, Chesapeake determined that the security for the loan was jeopardized by Dial's possible interest in Brewster's accounts receivable. Brewster sought, at Chesapeake's request, an agreement by Dial not to seek set-off of accounts receivable, but Dial refused. On November 17, 1988, Chesapeake declared the loan to be in default and made demand on the guarantee of the plaintiffs. In the letter declaring the loan to be in default, Chesapeake acknowledged that Brewster's accounts receivable were subject to claims by Dial because of the contra-account arrangement between Brewster and Dial. On November 21, 1988, Brewster sent a letter to Dial stating that Brewster's accounts receivable had been assigned to Chesapeake, and that Dial was to pay Chesapeake directly for any money owed to Brewster. Brewster then ceased manufacturing bottles.
 
 
 10
 The plaintiffs brought this action claiming that Brewster owed them over $300,000 as a result of its default on the loan they guaranteed and sought to collect the money that Dial owed to Brewster in satisfaction of the amount that Brewster owed to the plaintiffs. Dial claimed that Brewster owed it more than it owed Brewster, and sought to set-off the amount it owed Brewster by the amount Brewster owed it. If the accounts receivable were offset, Brewster would still owe Dial several hundred dollars and plaintiffs would not be able to collect any money on the outstanding balance of the note they guaranteed. If the accounts receivable were not offset, Dial would have to pay the plaintiffs the amount it owed Brewster but would not be able to collect the amount Brewster owed it and the proceeds of Brewster's accounts receivable would be used to pay off the outstanding balance of the loan guaranteed by the plaintiffs. Ultimately, either the plaintiffs or Dial would lose a substantial amount of money depending on the disposition of Brewster's accounts receivable.
 
 
 11
 The district court held that there was one agreement between Brewster and Dial, and that because there was only one agreement, offsetting the accounts receivable was proper, and it granted Dial's motion for summary judgment. The plaintiffs appealed.
 
 APPLICABLE LAW
 
 12
 The parties agreed in the district court that the applicable law was the UCC as adopted by Arizona. The pertinent statutory section provides:
 
 
 13
 (A) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in § 47-9206 the rights of an assignee are subject to:
 
 
 14
 (1) All the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and
 
 
 15
 (2) Any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.
 
 
 16
 Ariz.Rev.Stat.Ann. § 47-9318.
 
 ANALYSIS
 
 17
 The critical issue on appeal is whether there was one contract between the parties for supply of resin and manufacture of bottles, or whether these transactions were covered by two separate agreements. If there was one agreement, the rights of the plaintiffs, as assignees of Chesapeake's security interest in Brewster's accounts receivable,[1] would be subject to "[a]ll the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom," including Dial's right to offset. § 47-9318(A)(1). However, if there were two agreements, Dial would only be able to claim an offset of accounts receivable to the extent that its rights accrued "before the account debtor [Dial] receives notification of the assignment." § 47-9318(A)(1).
 
 
 18
 Dial contends that the contract embodying both of the agreements (resin supply and bottle manufacture) was contained in an amended purchase order. The purchase order contains the quantity and price of bottles to be manufactured by Brewster, and explains the payment terms for the bottles. The purchase order also contains the agreement to supply resin and the price of the resin; however, it does not state the terms of payment for the resin. Dial further contends that because Brewster could not obtain resin in the open market, the resin agreement was an integral part of the bottle contract.
 
 
 19
 The plaintiffs argue that the lack of payment information regarding the resin in the purchase order, along with the lack of explicit language in the purchase order making it a contract for both resin and bottles, prevent construing the purchase order as a contract for both. They argue that resin was covered by a separate agreement between the parties, that the agreements cannot be considered a single contract, and that because Dial charged a markup on the resin it obtained from its supplier, the resin agreement was not an inherent part of the bottle contract.
 
 
 20
 The Restatement of Contracts, in a reporter's comment, addresses the issue of separate contracts as opposed to a single contract.
 
 
 21
 If there are two separate contracts, one party's performance under the first and the other party's performance under the second are not to be exchanged under a single exchange of promises, and even a total failure of performance by one party as to the first had no necessary effect on the other party's duty to perform the second.... This is not so, however, if there is a single contract under which the parties are to exchange performances, even though it is proper to regard pairs of corresponding parts of those performances as agreed equivalents.
 
 
 22
 Restatement (Second) of Contracts § 240 mct. b (1981).
 
 
 23
 Further, the intent of the parties at the time of the agreement is to be considered in determining whether there is a single contract or whether there are two severable contracts. O'Malley Inv. & Realty Co. v. Trimble, 5 Ariz.App. 10, 422 P.2d 740, 747 (Ct.App.1967).
 
 
 24
 We hold that there was one contract covering both the resin and the bottles. Dial and Brewster initially entered into an agreement to manufacture bottles. When Brewster could not get the resin necessary for the production of the bottles on the open market, the only way Brewster could fulfill its contractual obligation was for Dial to get the resin for Brewster from its allocation from a petroleum company. The resin was only used for the bottles manufactured for Dial--it was not used for Brewster's other customers. Both the resin supply agreement and the bottle manufacturing agreement were embodied in one form--the change order. The resin agreement was inseparable from the bottle agreement because Brewster could not have made the bottles without the resin, and it could not get the resin except from Dial. If Dial had breached its agreement to supply resin, Brewster's performance of its agreement to produce bottles would have been excused. Therefore, the two agreements were inseparably intertwined, and there was only one contract between Dial and Brewster.[2]
 
 
 25
 We also reject plaintiff's contention that, even if there was only one contract, Dial's right to set-off was not a claim or defense arising from the contract within the meaning of § 47-9318(A)(1). The conclusion that there was one contract brings the offset claim within the protection of subsection (A)(1), regardless of whether the right of set-off was spelled out in the contract itself. See generally Business Fin. Servs., Inc. v. Butler & Booth Dev. Co., 147 Ariz. 510, 711 P.2d 649 (Ct.App.1985).
 
 
 26
 Finally, plaintiffs maintain that Dial waived its right to offset by entering into a payment plan at the time Brewster fell behind in its payments for resin. Dial claims that it rejected Brewster's suggestion, made at Chesapeake's request, that it execute a "Letter of Non Offset." Dial expressly rejected a proposal to waive its right to offset. Therefore, it cannot be held, under any logical construction, to have waived that right.
 
 CONCLUSION
 
 27
 There was one agreement between Dial and Brewster regarding supply of resin and production of bottles. Further, Dial had a common law right of offset arising out of the agreement and did not waive that right. The order of the district court is
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 The plaintiffs, as Brewster's assignees (via Chesapeake), have no greater rights than did Brewster. See Business Fin. Servs., Inc. v. Butler & Booth Dev. Co., 147 Ariz. 510, 711 P.2d 649 (Ct.App.1985); Valley Nat'l. Bank v. Flagstaff Dairy, 22 UCC Rep.Serv. (Callaghan) 787, 116 Ariz. 513, 570 P.2d 200 (Ct.App.1977)
 
 
 [2]
 The plaintiffs also argue that this is an issue of fact, and that the case should not have been decided on summary judgment. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, under Arizona law the divisibility of a contract is a matter of law. Leeker v. Marcotte, 41 Ariz. 118, 15 P.2d 969, 972 (1932). Therefore, the district court did not err in deciding this issue on summary judgment