**COLONY CADILLAC &
OLDSMOBILE, INC.**

v.

**Frederick YERDON.**

Supreme Judicial Court of Maine.

Argued March 13, 1989.
Decided April 19, 1989.

John M.R. Paterson (orally), Diane S. Lukac, Berntein, Shur, Sawyer & Nelson, Portland, for plaintiff.

Ralph W. Brown, Francis M. Jackson (orally), Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

McKUSICK, Chief Justice.

Colony Cadillac & Oldsmobile, Inc. commenced this action in the District Court (Portland) in August of 1983 to recover $1,710.50 allegedly due on a promissory note executed by Frederick Yerdon the year before to finance his purchase from Colony of a 1974 Chevrolet. Yerdon counterclaimed, alleging that Colony violated the Used Car Information Act, 10 M.R.S.A. §§ 1471–1478 (1980 & Supp.1988), by concealing rust damage to the car. This case is now before us for the second time. In *Colony Cadillac & Oldsmobile, Inc. v. Yerdon*, 505 A.2d 98 (Me.1986) (*Colony I*), we vacated the original judgment entered in favor of Colony because the trial court erroneously restricted the scope of Yerdon's cross-examination of Colony's president. After remand, as a sanction for Colony's failure to comply with court orders compelling further discovery, the District Court (*Henry, J.*) dismissed Colony's complaint and entered default judgment in favor of Yerdon on his counterclaim. After a hearing to set damages on Yerdon's counterclaim, the court (*Cleaves, J.*) awarded Yerdon $800 in compensatory damages, $1,000 as a civil penalty,[1] and $5,000 in attorney fees.

Both parties have appealed. Colony challenges the severity of the discovery sanction of dismissal as well as the District Court's authority on remand to reopen discovery at all. Yerdon challenges the District Court's denial of incidental or consequential damages and the sufficiency of the attorney fees awarded. The Superior Court (Cumberland County; *Alexander, J.*) affirmed the judgment in all its aspects, as do we.

I.

*The Default Judgment*

■ The events triggering both the *Colony I* appeal and the default judgment now before us arose from Yerdon's efforts to obtain as much information as possible about Colony's dealings with other dissatisfied customers. In *Colony I* we held that the District Court had erred in preventing Yerdon from cross-examining Colony's president about other customers' complaints, and we therefore vacated the original judgment in Colony's favor and remanded for a new trial. We expressly declined to address any of the other issues raised by Yerdon's first appeal. *See Colony I*, 505 A.2d at 100. In particular, Yer-

---

1. The Used Car Information Act authorizes the imposition of a civil penalty "of not less than $100 nor more than $1,000" for each violation. 10 M.R.S.A. § 1477(3) (Supp.1988).

don in that first appeal had challenged a pretrial order entered by the District Court (*Kellam, J.*) on April 11, 1984, denying his motion to impose sanctions on Colony for inadequate responses to discovery requests. Among the responses Yerdon's motion alleged to be inadequate had been Colony's refusal to provide any information about its complaints from other customers; instead, Colony had simply claimed in its answer that such information was irrelevant.

On remand the District Court granted motions by Yerdon to reopen discovery and issued orders compelling answers to interrogatories and production of documents, including the previously requested information about Colony's dealings with other customers. Colony now asserts that the April 11, 1984, order (entered prior to the first appeal) had laid down the law of the case with regard to the scope of discovery, arguing that even though our decision in *Colony I* vacated the judgment, the pretrial orders from that first proceeding remain in full force. Such a distinction rings especially hollow in these circumstances, when the discovery requests renewed on remand addressed the same issue we had just held the trial court had erroneously excluded at the first trial. Furthermore, even if the "law of the case" doctrine did apply, its effect would not be the automatic invalidation of the subsequent discovery orders. As between judges of coordinate jurisdiction, "the phrase 'law of the case' merely expresses 'the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" *Blance v. Alley*, 404 A.2d 587, 589 (Me.1979) (quoting *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912)). In order to "avoid[ ] unseemly conflict" and "discourage[ ] judge-shopping," *id.*, a judge must take special care in exercising his discretion when reconsidering a ruling made by a coordinate judge, but he retains that discretion. Colony has not shown any abuse of discretion by the District Court in *permitting* the reopening of discovery on

the very issue that led to the remand for a new trial.

■ After the District Court (*Studstrup, J.*) issued its order compelling discovery on July 9, 1986, Colony turned over to Yerdon a set of supplemental interrogatory answers and a collection of documents including Colony's file on its unfair trade practices proceeding before the Attorney General with notes on all the consumer complaints involved. Yerdon, however, remained unsatisfied with several aspects of the supplemental answers. In particular he demanded the confidential agreements settling the litigation of certain of those complaints. On the appeal now before us, Colony claims that those continued discovery requests by Yerdon were abusive and burdensome, and it asserts that the requested documents would not have provided Yerdon with any significant information he did not already possess.

At the time, however, Colony failed to take the action the discovery rules provide for the trial court to adjudicate adversarial discovery claims. If Colony viewed Yerdon's discovery demands to be improper, Colony should have moved for a protective order under M.R.Civ.P. 26(c). *See* M.R.Civ. P. 37(d); *Ireland v. Galen*, 401 A.2d 1002, 1005 (Me.1979). But, instead of moving for a protective order, Colony simply refused to comply fully with the terms of successive discovery orders. *Sua sponte*, the court (*Henry, J.*) did protect Colony by requiring Yerdon to keep the settlement agreements confidential as part of its October 20 order compelling, *inter alia*, Colony's production by October 24 of "the details of all complaints and litigation and the confidential settlement agreements pertaining thereto." Colony still did not produce the information.

■ That October 20 order also denied Yerdon's motion to default Colony for its refusal to comply fully with previous discovery orders, and instead ordered as a lesser sanction that Colony return the jewelry it was holding as collateral on Yerdon's promissory note.[2] Finally, more than

---

2. Colony's noncooperation in the discovery proceedings was not restricted to the requests for

information. The October 20 order also denied Colony's motion to dissolve a September 15 or-

a month after the October 24 deadline, the court (*Henry, J.*) did grant Yerdon's renewed motion for default judgment on December 8, 1988.

Courts do not resort lightly to such extreme sanctions. "Ordinarily the court will exercise its discretion by imposing the mildest of the sanctions appropriate to the circumstance." Field, McKusick & Wroth, *Maine Civil Practice* § 37.4 (2d ed. 1970). On appeal we give close scrutiny to any decision to dismiss a plaintiff or default a defendant, to determine whether the trial court has abused its discretion. *See Pelletier v. Pathiraja*, 519 A.2d 187, 189–90 (Me.1986). Giving that close scrutiny to the circumstances of the case at bar, we cannot say it was unreasonable for the District Court to conclude that Colony had obdurately refused to comply with past court orders. In light of the lesser sanctions already unsuccessfully tried, it was not an abuse of discretion for the court to take final action rather than continue to search for an accommodation.

## II.

### *Damages*

■ On his own appeal Yerdon contends that the court erred in denying him any incidental or consequential damages. The District Court's award of compensatory damages amounted to $800. The evidence supports a conclusion that this figure, not here contested by either party, represents the difference between the fair market value of the car and the total amount Yerdon actually paid Colony. In response to Yerdon's motion for findings of fact, the District Court expressly declared that he "did not suffer incidental and/or consequential damages as a result of the sale." We certainly cannot find any clear error in that finding of fact.

Yerdon claims two additional items as damages: $222.75 for certain repair expenses he incurred shortly before discover-

ing that the car would not pass state inspection because of the rust damage, and $2,875.96 spent for a series of rented cars after he had to take his own car off the road. In our review of this default judgment, Yerdon's averments that he did incur those expenses for those purposes and that Colony did conceal severe rust damage rendering the car incapable of passing inspection "are taken as true and, in effect, become findings of fact." *Sheepscot Land Corp. v. Gregory*, 383 A.2d 16, 24 (Me. 1978). From those facts, however, it did not follow that Colony was responsible for either the repairs or the substitute transportation. The default judgment establishes liability only; the extent of the damages remains a question for the court. *See Oliver v. Martin*, 460 A.2d 594, 595 (Me.1983). In reviewing the damage award, we assume that the court made such additional factual findings as are necessary to support its award and review those assumed findings for clear error. *See Libby v. Lorrain*, 430 A.2d 37, 38 (Me.1981).

The repair expenses of $222.75 that Yerdon claims as incidental damages were primarily for electrical repairs. In no way do they relate to the rust problem that rendered the car incapable of passing inspection. The averments of the counterclaim and the additional evidence taken at the hearing on damages fully support an assumed factual finding that the repairs reflected normal wear and tear and that such repairs are to be expected in a car of that age. The only link between those expenses and Colony's conduct that Yerdon has alleged is a "but for" relationship: the expenses were futile because even after the electrical repairs the car still could not pass inspection; but for Colony's concealment of the fact the car was terminally rusty, Yerdon would never have repaired the car's electrical system. That slim link does not make those electrical repair expenses legally recoverable as incidental or consequential damages.

der (*O'Rourke, J.*) holding Colony in contempt, originally for its late payment of attorney fees awarded in connection with various discovery orders. After the September 15 order, over Yerdon's repeated objections, Colony continued to

tender payment only in the form of a check with a preprinted "accord and satisfaction" endorsement until expressly ordered on October 20 to deliver an "unconditionally negotiable check."

■ Yerdon's other claim, that his car rental expenses are "analogous to cover," has no merit. When the seller's breach of a contract for the sale of goods forces the buyer to buy substitute goods, damages for cover are limited to the difference between the contract price and the reasonable cost of the substitute. *See* 11 M.R.S.A. § 2–712(2) (1964). Yerdon originally contracted to buy a car for $2,738; any discrepancy between that value and the value of the car he actually bought is the subject of direct damages, the amount of which Yerdon does not contest. On his claim of incidental damages analogous to cover, Yerdon had the burden of proving both that reasonable substitute transportation was more expensive than simply buying another $2,738 car and that he did in fact incur such reasonable expenses. The record compels no such findings of fact. *See Luce Co. v. Hoefler,* 464 A.2d 213, 215 (Me.1983).

### III.

### *Attorney Fees*

Having failed to meet its warranty obligations under the Used Car Information Act, 10 M.R.S.A. § 1476(2)(C) (1980), Colony is liable to Yerdon for reasonable attorney fees, "irrespective of the amount in controversy." *Id.* § 1476(4); *see also id.* § 1477(3) (Supp.1988). Yerdon contends that the court erred in awarding fees of only $5,000 despite his submission of affidavits showing time charges in excess of $17,000. The court's determination of a reasonable fee, however, "is to be reviewed only for abuse of discretion." *Poussard v. Commercial Credit Plan, Inc.,* 479 A.2d

881, 884 (Me.1984). In exercising its discretion, the court must take all relevant factors into account.[3] The time actually spent on the case is not by itself decisive: the court must "measur[e] hours *reasonably* expended in advancing the client's interests." *Id.* at 886 (emphasis in original).

■ In arguing that the District Court abused its discretion, Yerdon raises only two points: that Colony did not controvert Yerdon's affidavits and that the disparity between the amount requested and the amount awarded proves that the court must have taken into account the amount in controversy. It is the court, however, not the parties, that decides the reasonable fee. The opposing party, who will normally have little or no information on the subject that is not already available to the court, has no duty to advance any counterproposal of its own. Nor does the size of Yerdon's award by itself show that the court took the amount in controversy into account. If anything, the fee award, more than six times the compensatory damages,[4] would tend to show that the court properly considered all the remedial purposes of the attorney fee statute, including the deterrence of unmeritorious defenses against small claims. The trial court is "vested with broad discretion in determining the award of counsel fees." *Freme v. Maher,* 480 A.2d 783, 788 (Me.1984). Yerdon has not demonstrated that the court abused its discretion.

■ The fee award we here affirm, however, addressed Yerdon's legal expenses only up to January 16, 1987. Yerdon now moves for the award of attorney fees for

---

3. Factors to be considered in setting a fee award include:

(1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by client or circumstances; (8) the [degree of success]; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of

the professional relationship with the client; and (12) awards in similar cases.
*Poussard v. Commercial Credit Plan, Inc.,* 479 A.2d 881, 884 (Me.1984). The eighth factor enumerated in *Poussard,* "the amount involved and the results obtained," must here be reformulated in light of the statutory mandate that the fee award be "irrespective of the amount in controversy." 10 M.R.S.A. § 1476(4) (1980); *see Thurber v. Bill Martin Chevrolet, Inc.,* 487 A.2d 631, 635 (Me.1985).

4. Even if the $1,000 civil penalty under 10 M.R.S.A. § 1477(3) is taken into account, the attorney fee is almost three times the total damages.

this appeal. We agree that it is entirely in keeping with the remedial purposes of the consumer protection laws for the fee award under section 1476(4) to include the expenses necessary for his successful defense of the District Court judgment on appeal before us and before the Superior Court. Determining the reasonable fee award, however, is a factual matter. As in the proceeding in which the District Court awarded fees for the first appeal and for the two trials, it will again be necessary to take affidavits or other evidence. This time it will also be necessary to apportion Yerdon's reasonable legal expenses incurred subsequent to January 16, 1987, between the issues on which he has prevailed and the issues on which Colony has prevailed. *See Poussard v. Commercial Credit Plan, Inc.,* 479 A.2d at 885–86. These factual questions call for the exercise of the trial court's discretion on the basis of evidence produced through affidavit or testimony. We must therefore remand the case to the District Court for the limited purpose of determining Yerdon's reasonable attorney fees on appeal. *See Cooley v. Powell,* 544 A.2d 752, 753 (Me. 1988).

The entry is:

Judgment affirmed. Remanded to the Superior Court with instructions to remand to the District Court for determination of the reasonable attorney fees to be awarded Yerdon for all proceedings subsequent to January 16, 1987.

All concurring.