2008 ME 65

**David L. GOULD**

v.

**A–1 AUTO, INC.**

Supreme Judicial Court of Maine.

Argued: Jan. 18, 2008.
Decided: April 8, 2008.
Reconsideration Denied May 19, 2008.

Rebecca S. Webber, Esq. (orally), Sonia J. Buck, Esq., Linnell, Choate & Webber, LLP, Auburn, ME, for David L. Gould.

Daniel W. Bates, Esq. (orally), Charles J. Rudelitch, Esq., Farris Law, P.A., Gardiner, ME, for A–1 Auto, Inc.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.

MEAD, J.

[¶ 1] David Gould appeals from an amended judgment entered in the Superior Court (Androscoggin County, *Gorman, J.*) in which the court reconsidered its original judgment in his favor and entered an amended judgment in favor of A–1 Auto, Inc. Gould argues that the court erred in failing to credit his testimony as to the amount of overtime he worked, in incorrectly calculating the overtime pay he is due, and in its reasoning in the amended judgment. We agree in part and vacate the amended judgment and remand to the trial court for recalculation of overtime pay.

## I. BACKGROUND

[¶ 2] David Gould worked for A–1 Auto, Inc., a Maine corporation, from September 2002 to April 2005. He was hired by his friends and A–1 Auto's owners, Richard and Gayle Hall, to do light mechanical work and to assist with sales and general business operations. He was later promoted to "general manager," although it is unclear if his responsibilities changed. Gould worked during normal business hours and occasionally assisted the Halls in repossessing vehicles, generally after hours. Gould was paid a per job fee of ten dollars for unsuccessful attempts and twenty dollars for successful repossessions.

[¶ 3] Gould quit in April 2005 following a disagreement about time off. He initiated the instant action in October 2005, claiming unpaid overtime, unpaid wages, and statutory damages for those unpaid wages.[1] 26 M.R.S. §§ 621–A, 626, 664 (2007).[2] Following a two-day bench trial, the Superior Court issued a written ruling on April 10, 2007. The court did not find credible Gould's testimony that he routinely worked through breaks and lunch and worked overtime; however, it did find several specific statements credible. On this basis, the court found that Gould had worked 7.5 hours of unpaid overtime.[3] It then awarded him $112.50, plus $112.50 in liquidated damages. *See* 26 M.R.S. §§ 664(3), 670 (2007).

[¶ 4] On A–1 Auto's motion for judgment as a matter of law and for further findings, the Superior Court issued an amended judgment on May 30, 2007. It concluded that Gould had been paid wages

---

1. Gould brought, and A–1 Auto counterclaimed with, other claims that were ultimately dismissed and are not relevant here. Gould's argument regarding the other claims does not merit discussion.

2. While 26 M.R.S. § 664(3)(A) was amended in 2007 following these events, P.L. 2007, ch. 360, § 5 (effective September 20, 2007), as this amendment dealt with exclusions from the overtime requirements, inapplicable here, this change is not relevant.

3. This represents one hour of overtime and 6.5 hours spent repossessing vehicles. A–1 Auto has not appealed this finding, so the Superior Court's conclusion that Gould is due wages for those hours is not before us.

for time he had not worked, and that because this overpayment was greater than the amount Gould had recovered, entered judgment for A–1 Auto. Gould filed a timely appeal.

## II. DISCUSSION

### A. Original Judgment

[¶ 5] Gould argues that the Superior Court erred in finding that his failure to complain about his perceived underpayment at the time he received his wages constituted a waiver of his right to recover unpaid overtime. This argument mischaracterizes the Superior Court's findings. The court did not base its findings on a waiver theory as Gould asserts. Rather, it did not find Gould's testimony, or the testimony of other witnesses, that Gould worked over forty hours every week credible.[4] This was not altered by the amended judgment.

 [¶ 6] This finding regarding Gould's credibility is a finding of fact. We will defer to a trial court's findings of fact "unless such findings are clearly erroneous." *Me. Farmers Exch., Inc. v. Farm Credit of Me., A.C.A.,* 2002 ME 18, ¶ 16, 789 A.2d 85, 90. "The meaning and weight to be given the exhibits and the testimony of the witnesses is for the fact-finder to determine and must be upheld unless

clearly erroneous." *Jenkins, Inc. v. Walsh Bros., Inc.,* 2002 ME 168, ¶ 7, 810 A.2d 929, 933. As there is competent evidence in the record to support the Superior Court's finding, the original judgment is affirmed.

### B. Amended Judgment

[¶ 7] Gould argues that the Superior Court erred in its amended judgment when it offset the amount A–1 Auto owed Gould by the amount that it found he owed A–1 Auto. The court found Gould had received wages for time he had not worked on certain holidays and awarded A–1 Auto a credit for this amount upon the theory that the holiday pay could be considered an overpayment. To the contrary, the evidence clearly and indisputably demonstrates that there was no dispute or misunderstanding between the parties regarding A–1 Auto's policy regarding holiday pay.

 [¶ 8] The record clearly establishes that Gould received holiday pay as a benefit of his employment with A–1 Auto. There is no evidence suggesting that holiday pay was conditioned on any future contingency or subject to repayment under any circumstances. The facts regarding the terms of employment, apart from overtime, were offered without dispute; the dispute was whether or not Gould worked the hours he claims to have worked.[5]

---

4. Similarly, Gould misreads the Superior Court's finding that his testimony was not credible when he argues that the court incorrectly assigned him the burden of proof. The court's finding did not relate to the burden of proof but to Gould's lack of credibility. Again, as discussed below, such a finding of fact will be upheld unless it is clearly erroneous. *Me. Farmers Exch., Inc. v. Farm Credit of Me., A.C.A.,* 2002 ME 18, ¶ 16, 789 A.2d 85, 90.

5. A–1 Auto urges us to undertake the analysis established in *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944),

and in *Crook v. Russell,* 532 A.2d 1351 (Me. 1987). *Skidmore* addressed the issue of when, under federal law, an employee is working when he or she is waiting while on call. *Skidmore,* 323 U.S. at 135–37, 65 S.Ct. 161. The Court held that there is nothing in the law that precludes waiting time from being work time. *Id.* at 136, 65 S.Ct. 161. It is a factual question that is to be determined by examining the "agreements between the particular parties" and "all of the surrounding circumstances." *Id.* at 137, 65 S.Ct. 161. In *Crook* we adopted *Skidmore's* approach and analyzed the same question under a "totality

Thus, there is no basis in the record for the Superior Court's finding that holiday pay constituted an overpayment.[6] Because there is no competent evidence in the record to support the Superior Court's amended judgment, that judgment is vacated. *Wells v. Powers*, 2005 ME 62, ¶ 2, 873 A.2d 361, 363.

## C. Calculation of Unpaid Overtime

[¶ 9] Lastly, Gould argues that the Superior Court erred in its original judgment when it calculated his unpaid overtime to be $112.50. It arrived at this amount by assuming that $10 per hour was Gould's wage at the relevant times; multiplying that amount by 1.5 to arrive at the overtime rate; and then multiplying that amount by 7.5 hours of unpaid overtime, for a product of $112.50. This calculation does not include Gould's repossession commission in his regular hourly rate as it should have. *See* 26 M.R.S. § 664(3).

[¶ 10] The primary purpose of statutory interpretation is to give effect to the intent of the Legislature. *Arsenault v. Sec'y of State*, 2006 ME 111, ¶ 11, 905 A.2d 285, 288. When the language of the statute is unambiguous, that intent is found in the statute's plain meaning. *Currier v. Huron*, 2008 ME 19, ¶ 14, 940 A.2d 1085, 1088. Title 26 M.R.S. § 664(3) states that an employee is due "1 1/2 times the regular hourly rate ... for all hours actually worked in excess of 40 hours in that week. The regular hourly rate includes all ... commissions and other compensation that is paid or due based on actual work performed...."

[¶ 11] While a court's award of damages is granted deference and will be upheld if there is a rational basis in the evidence, mathematical errors are not owed deference. *Avery v. Kennebec Millwork, Inc.*, 2004 ME 147, ¶¶ 3, 5, 861 A.2d 634, 635–36. The Superior Court erred by not including Gould's commissions in his regular hourly rate.

[¶ 12] On remand, the trial court is to recalculate the amount of Gould's damages. The regular hourly rate for a given week should be calculated by: (1) multiplying the appropriate hourly wage by the total number of hours worked in the week; (2) adding the commissions earned in the week; and (3) then dividing the sum by forty. The overtime pay due for a given week would then be the regular hourly rate multiplied by 1.5 for each hour over forty hours.[7]

## D. Attorney Fees

[¶ 13] A determination of reasonable attorney fees is a factual matter for the trial court. *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 35, 901

of the circumstances" standard. 532 A.2d at 1354.

This analysis is appropriate only where the arrangement between the parties is ambiguous. In this matter, the arrangement is clearly established—Gould routinely received paid holiday wages. As such, *Skidmore* and *Crook* are inapposite.

**6.** A copy of A–1 Auto's written personnel policy, which is provided to all new employees, was admitted into evidence at trial. The policy, and the unequivocal testimony of Rich Hall, the owner and operator of A–1 Auto, establish the existence of certain uncontroverted facts: after six months of employment, every employee of A–1 Auto is entitled to paid holidays. Holidays include New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day, and the employee's birthday. Also, A–1 Auto routinely releases employees at noon on days preceding major holidays and pays them for the full day.

**7.** Assuming that the employee, as appears to be the case here, has not been paid for those hours over forty.

A.2d 189, 200 (citing *Beaulieu v. Dorsey*, 562 A.2d 678, 680 (Me.1989)). In making such an award, a court must provide a clear explanation of its reasons for the award. *Miele v. Miele*, 2003 ME 113, ¶ 17, 832 A.2d 760, 765. We have adopted a list of relevant factors, based on those described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), for the Superior Court to consider in determining what award, if any, is reasonable. *Colony Cadillac & Oldsmobile, Inc. v. Yerdon*, 558 A.2d 364, 368 n. 3 (Me.1989). These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by client or circumstances; (8) the [degree of success]; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Yerdon*, 558 A.2d at 368 n. 3 (alteration in original and quotations marks omitted).

[¶ 14] Upon remand, if there is a motion for attorney fees, the trial court may make such an award upon a careful consideration of the factors enumerated above.

The entry is:

Amended judgment vacated; original judgment affirmed with the exception of the amount of damages, which is remanded to the Superior Court for recalculation of unpaid overtime consistent with this opinion; on motion for attorney fees, the Superior Court is to calculate an award, if any, consistent with this opinion.