ENTERED OCT 2 4 201̶4̶
Mc

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-13-79

3/24/2014

BAYSIDE I, LLC AND
BAYSIDE II, LLC,

      Petitioner,

      v.

EDWARD A. DAHL, DIRECTOR,
DEOARTMENT OF ADMINISTRATIVE
AND FINANCIAL SERVICES, BUREAU
OF GENERAL SERVICES, AND JETPORT
STATE BUILDING, LLC

      Respondents.

ORDER ON MOTION TO
TAKE ADDITIONAL
EVIDENCE AND TO REMAND
80C APPEAL

STATE OF MAINE
Cumberland co. Clerk's Office

MAR 25 2014

RECEIVED

This matter is before the Court on the petition for review of final agency action

pursuant to Rule 80C filed by Bayside I and Bayside II (Bayside). Bayside has filed a

motion to take additional evidence and a motion to remand and requested expedited

review of these matters. Bayside argues in its motion for remand that BGS erred in not

conducting an appeal hearing on Bayside's appeal of an award for a lease for office space

in Portland or South Portland for the Department of Health and Human Services (DHHS),

the Department of Labor (DOL) and the Workers Compensation Board (WCB). Bayside

further claims that as a matter of due process it was entitled to an independent and

impartial review of the appeal. In short, Bayside claims it was denied as an unsuccessful

bidder an opportunity for a meaningful appeal.

In its motion for additional evidence, Bayside seeks to take additional evidence on

the following issues: (1) the adequacy of the administrative appeal conducted by BGS;

(2) the failure of JetPort State Building, LLC (Jetport) to demonstrate an ownership

interest in the parcel where the proposed office building is to be located; (3) the failure of Jetport to demonstrate legal access to the proposed site; (4) the scoring on the location of the proposed site; and (5) Jetport's inability to comply with the occupancy deadline of February 2015.

For the following reasons, the motions to remand and to take additional evidence are denied.

## BACKGROUND

BGS issued Request for Proposals in July 2013 on behalf of DHHS, DOL and WCB for the lease of approximately 70,000 square feet of office space in Portland or South Portland. The RFP stated that BGS would evaluate the submissions based on (1) location; (2) quality of the facility; (3) experience of the party making the submission; and (4) cost. The RFP provided that BGS reserved "[t]he right to reject any and all proposals." The RFP also provided that the lease would require occupancy of the office space between February 2015 and April 2015 and that the State would "consider a new facility, renovated facility, or a combination of new construction and renovated space in a single or multi-tenant facility." The objective of the State was to consolidate or co-locate the three agencies in a single facility. The RFP provided for a right of appeal.

· Bayside submitted its timely proposal on September 20, 2013. BGS received four proposals and awarded the contract to Jetport that had proposed a new facility located in South Portland and was the highest rated bidder. Bayside had proposed locating the agencies in two buildings and was the lowest rated bidder. On October 23, 2013, BGS notified Bayside by letter that it had selected a proposal submitted by Jetport. This letter reiterated the right of appeal. Bayside filed on November 6, 2013 a timely appeal and

2

requested an appeals hearing pursuant to Section 2(2) of 18-554 C.M.R. ch. 120. BGS's Director requested from William Leet, Director of Leased Spaces and one of the six individuals responsible for selecting the Jetport proposal to respond to Bayside's appeal and to provide (i) a copy of the RFP, (ii) the proposals submitted in response to the RFP and (iii) the RFP evaluation documents and notes of the reviewers. BGS's Director issued its decision denying the appeal on November 21, 2013. The State entered into a lease with Jetport on December 26, 2013.

## DISCUSSION

### 1. Standard of Review

The Court will only review an agency decision "for errors of law, abuse of discretion, or findings of fact not supported by the record." *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128 (quoting *Save Our Sebasticook, Inc. v. Bd. of Entvl. Prot.*, 2007 ME 102, ¶ 13, 928 A.2d 736). Where there is a question of statutory interpretation, the court reviews the decision for errors of law. *Botting v. Department of Behavioral and Developmental Services,* 2003 ME 152, ¶ 9, 838 A. 2d 1168. The "primary purpose of statutory interpretation is to give effect to the intent of the Legislature." *Gould v. A-1 Auto, Inc,* 2008 ME 65, ¶ 10, 945 A. 2d 1225 (citation omitted). The court interprets the plain language of the relevant statute if it is unambiguous. Here the language of the applicable statute is unambiguous.

### 2. Motion to Remand

Bayside asks that this court remand to BGS to conduct an appeal in accordance with 5 M.R.S.§ 1825-E and 18-554 C.M.R. ch. 120 or, in the alternative, to conduct an appeal involving an independent review of the BGS's award decision concerning the RFP in this

3

case. Bayside argues that it was entitled to a hearing on its appeal and at the very least; it was entitled to a meaningful appeal. Having adopted a competitive bid process in the RFP for the award of the contract, Bayside contends that BGS was required to comply with the terms of the RFP to ensure fairness among bidders. Bayside also argues that because the appeal language in the RFP mirrors the language in 5 M.R.S. § 1825-E and 18-554 C.M.R. ch. 120, the procedures should be consistent with this provision because the RFP did not define the appeal process. Section 1825-E provides that persons aggrieved by an agency contract award may request a hearing. Bayside states that it reasonably inferred that established appeal procedures of 5 M.R.S. § 1825-E and 18-554 C.M.R. ch. 120 would apply to this RFP. Bayside points out that BGS's regulations in ch. 120 require a hearing unless the Director makes certain determinations, none of which are relevant here. Further relying on BGS's regulations, Bayside argues that it would be entitled to present evidence of irregularities in the bidding and selection process creating fundamental unfairness in the award and that the hearing would be conducted before an appeal committee of three people. See 18-554 C.M.R. ch. 120 § 3.

Alternatively, Bayside states that BGS was still required to provide a meaningful appeal to aggrieved parties in accordance with the RFP and due process. The error here, according to Bayside, was not conducting an independent review and asking Mr. Leet, who participated in the selection process, to provide a written response to Bayside's appeal and rendering a decision one day latter solely based on Mr. Leet's response.

Bayside's reliance on 5 M.R.S. § 1825-E is misplaced because the operative provisions governing the location of leased spaces for State agencies are found in 5 M.R.S. § 1742-D. Moreover, the language of 5 M.R.S. § 1742-D is unambiguous, which

4

means it is up to the court to interpret the plain language of section 1742-D. Section 1742-D does not require BGS to conduct an appeal hearing.

Section 1742-D of Title 5 directs BGS "to work closely with all departments and agencies locating real property leases to ensure that agency program requirements are met to the maximum extent possible." 5 M.R.S. § 1742-D. Section 1742-D does not require a particular process to be followed in locating real property leases and the legislature has not granted to an unsuccessful bidder the right to appeal an award decision. The award of the lease in this case is governed solely by the RFP, which provided unsuccessful bidders an opportunity for independent review by the Director of BGS. The RFP did not require an appeal hearing. In the absence of a statutory requirement, the state agency is bound only by the RFP by which it first issued a request for proposals to be followed by subsequent negotiation with the successful respondents. *See Danis Clarkco Landfill Company v. Clark County Solid Waste Management District*, 653 N.E. 2d 646, 657 (Ohio 1995). Here the RFP reserved not only the right to reject any and all proposals but also the right to negotiate the terms of the final lease and to seek to negotiate a best and final offer. BGS received four proposals and awarded the lease to Jetport. In the award letter, BGS stated that the selection of Jetport was not a binding or enforceable contract and that the parties were to make a good faith effort to negotiate a mutually acceptable lease.

A plain reading of the statutory provision relied on by Bayside discloses that section 1812 does not include the lease of office space, but rather applies to services, supplies, materials and equipment. 5 M.R.S. § 1811 (1). Thus, the provisions governing the purchase of goods and services and granting aggrieved person the right to request an appeal hearing does not apply to securing leased office space by BGS under Chapter 153.

5

The court rejects Bayside's argument that by engaging in a competitive bid process, BGS was required to follow the appeals process in Chapter 155.

As to the argument that BGS failed to afford an independent and impartial review of the award decision, the court rejects this argument. Bayside has made no showing that it was treated any differently than any other bidder. All bidders were treated fairly. All received notice of the award and were given an opportunity to appeal. Moreover, Bayside does not have a constitutionally protected property interest in a state contract to require due process. *See Carroll Look F. Construction Co., Inc. v. Town of Beals*, 2002 ME 128, ¶ 11, 802 A. 2d 994. In *Carroll*, the Law Court stated that an unsuccessful bidder has no property interest in a state contract "unless the applicable law or regulation mandated that the contracting body accept the bid and gave it no discretion whatsoever to reject the bid." 2002 ME, ¶ 16 (citation omitted). Because the Town of Beals had reserved the right to reject any and all bids for the construction project, the complainant had no property interest upon which to base its due process claim. *Id.* at ¶ 12. Here, BGS reserved the right to reject any and all bids. Thus, Bayside has not been deprived of due process.

BGS followed the process set forth in its RFP, granted an unsuccessful bidder the opportunity to appeal the award decision. The Director did not participate in the preparation of the RFP and did not participate in the evaluation of the RFP. (R. at 163-168). The Director's consideration of the award was therefore impartial and independent. Bayside has not presented any evidence to suggest otherwise except the Director's request to Mr. Leet to provide a written response to the appeal. The request to provide a written response is no different than the customary practice in any contested matter to

6

give the opposing party the opportunity to be heard before a decision is reached. After reviewing the submissions of the parties and the RFP documents that the Director requested, the Director rendered his decision. There is no evidence that the Director based his decision "solely" on the response of Mr. Leet as claimed by Bayside.

### 3. Motion to Take Additional Evidence

At issue here is what is the appropriate process when an unsuccessful bidder appeals the lease award. In Bayside's motion for additional evidence, it seeks to have the court to take additional evidence on the following issues: (1) the adequacy of the administrative appeal conducted by BGS; (2) the failure of Jetport State Building, LLC (Jetport) to demonstrate an ownership interest in the parcel where the proposed office building is to be located; (3) the failure of Jetport to demonstrate legal access to the proposed site; (4) the scoring on the location of the proposed site; and (5) Jetport's inability to comply with the occupancy deadline of February 2015.

The court reviews a decision of an administrative agency "for errors of law, abuse of discretion, or findings of fact not supported by the record." *Concerned Citizens to Save Roxbury*, 2011 ME 39, ¶ 19, 15 A. 3d 1263. In the context of administrative action on a contract award, the court determines if the action was "unreasonable, has no rational basis justifying the conclusion or lacks substantial support in the evidence." *Cutler v. State Purchasing Agent*, 472 A. 2d 913, 916 (Me. 1984) (citation and quotation marks omitted).

Under the Maine Administrative Procedure Act, the reviewing court may take additional evidence if,

> [I]t is shown that the additional evidence is material to the issues presented in the review, and could not have been presented or was erroneously disallowed in

7

proceedings before the agency. After taking the additional evidence, the agency may modify its findings and decisions, and shall file with the court, to become part of the record for review, the additional evidence and any new findings or decision.

5 M.R.S. § 11006 (2013). Judicial review, however, is to be confined to the record upon which the agency decision was based. 5 M.R.S. § 1106(1).

The decision in this Rule 80C appeal of the award of a lease was based on the RFP and the proposals submitted by the bidders. These documents are already in the administrative record on file with the court. Bayside seeks to take additional evidence on its claim the BGS did not conduct an independent and impartial review of the award decision. Rule 80C(e) requires a moving party to provide a statement "sufficient to permit the court to make a proper determination as to whether the taking of additional evidence as presented in the motion and offer of proof is appropriate under this rule and if so to what extent." M.R.Civ.P. 80C(e).

When a moving party wishes to take additional evidence on bias or lack of impartiality the moving party must make out a prima facie case and cannot rely on vague and unsubstantiated allegations. *Ryan v. Town of Camden*, 582 A. 2d 973, 975 (Me. 1990); *Cutler*, 472 A. 2d at 918 (base allegation of "social friendship" insufficient). In this case, Bayside has failed to make out a prima facie case. Bayside points to a letter acknowledging receipt of Bayside's appeal and requesting the Director of Leased Space, Mr. Leet, to provide a response to the appeal and to provide the RFP, the proposals submitted, the evaluation documents and reviewers' notes. (R. at 191). Bayside also argues that because emails show that the Director issued his decision on the same day and within a few hours after Mr. Leet provided his response, that the Director rubberstamped the review committee's determination. The argument that the Director must have rubber

8

stamped the conclusions of Mr. Leet because he denied the appeal within a few hours of receiving Mr. Leet's response does not make out a prima facie case of bias or lack of impartiality. It is equally possible that the Director found persuasive the analyses and recommendations of Mr. Leet.

In *New England Telephone and Telegraph Co. v. Public Utilities Commission*, 448 A. 2d 272 (Me. 1982), New England Telephone unsuccessfully made the same arguments regarding the Public Utilities Commission on a request for a rate increase. The Court noted that a court is to presume "in the absence of clear evidence to the contrary that administrative agencies have properly discharged their official duties" and further noted the presumption of regularity accorded administrative proceedings. *Id.* at 279 (citations omitted). Even in the absence of the presumption of regularity, the record did not support a finding of a due process violation attributable to the quickness of the Commission's decision. *New England Telephone*, 448 A. 2d at 279. The mere fact that the Commission adopted the positions of staff was insufficient to make out a case of prejudgment or bias. *Id.* at 280.

Bayside's request to take additional evidence on Jetport's lack of ownership or access to the proposed property at the time its proposal was submitted also fails. Contrary to Bayside' claim, the RFP did not require a bidder to demonstrate present ownership or access to the property or facility proposed for state agencies. The RFP set forth a number of requirements that a bidder was to address in its proposal, including the location of facility, the quality of facility, experience of bidder and cost. (R. at 11-17). Under the category of location, the RFP required bidders to address, among other subcategories, public transportation, visitor access, expandability of space and parking.

9

(R. at 11-13). Also under location, bidders were to submit a site plan. With regard to site plan, the RFP required that the site plan show "site access and egress, building location and size, green space, and a Parking layout (showing public and staff parking in separate areas), as well as a map showing the location of your proposed property." (R. at 12). The RFP further requested "[i]f available, attach photographs and/or renderings of the proposed property . . . [p]lease illustrate the expandability of both the building and parking," (R. at 12). The RFP does not require that the bidder demonstrate present ownership or access. The RFP recognized the unreasonableness of requiring a bidder to purchase property and obtain all necessary leases, permits or easements prior to being awarded the lease contract. The RFP only required that a bidder submit a schedule for "Final permitting: Construction/renovation commencement; and Construction/renovation completion." (R. at 15). Accordingly, Bayside's request on these two points is rejected.

Bayside has also asked the court to substitute its judgment for the judgment of BGS on the evaluation of the proposals. This is not a proper role for a court reviewing an administrative agency. *International Paper Company v. Board of Environmental Protection*, 1999 ME 135, ¶ 29, 737 A. 2d 1047; *Imagineering, Inc. v. Superintendent of Insurance*, 593 A. 2d 1050, 1053 (Me. 1991). The court will not substitute its judgment for the administrator's "where there may be a reasonable difference of opinion." *Cutler*, 472 A. 2d at 916 (citation omitted).

The RFP advised bidders that the review team would use a consensus approach to evaluate the bids. This meant that "[m]embers of the review team will not score proposals individually but instead arrive at a consensus as to assignment of points on each category of each proposal." (R. at 10). As the scoring documents show, each of the

10

four broad categories of requirements were scored taking into account all of the items listed under each major category. (R. at 162). The review team did not score each subcategory separately. Transportation was one twelve items to be evaluated under location. (R. 11-13). Consequently, the request of Bayside to take additional evidence on transportation would serve no useful purpose.

Bayside's request reduces to an attempt to inquire into the mental processes of the members of the review team. The Law Court has pronounced "[p]arties are not permitted to inquire about the mental processes of administrative decision-makers unless there is a strong showing of bad faith or improper behavior." *Dyer v. Department of Transportation*, 2008 ME 106, ¶ 1, n. 1, 951 A. 2d 821 (citation omitted). A strong showing of improper behavior is required to protect an administrator from a fishing expedition by a disappointed bidder. *Cutler*, 472 A. 2d at 918. Bayside has failed to make any showing of bad faith or improper behavior on the part of BGS.

Bayside's request to take additional evidence on Jetport's ability to meet the occupancy date set forth in the RFP also fails. Bayside's offer of proof with regard to occupancy amounts to no more than speculation that Jetport will not have obtained the necessary municipal permits and easements in order to complete construction before the anticipated occupancy date, and "upon information and belief" that Jetport has not obtained the necessary permits from the Maine Department of Environmental Protection. (Motion to Take Additional Evidence at 10). This is an insufficient showing to entitle Bayside to take additional evidence. *See Cutler*, 472 A. 2d at 918.

Additionally, the RFP sought proposals to lease space for three state agencies with the state not incurring any obligation except to pay rent commencing at the end of

11

the first month of occupancy. (R. at 57). By committing to the occupancy date, the successful bidder assumed the obligation of obtaining, and the risk of failure to obtain, the necessary permits and easements to meet the occupancy date. These matters are appropriate subjects to be addressed in the lease between the successful bidder and the State. In fact, the State and Jetport have addressed such risks in the lease executed on December 26, 2013. (Motion to Take Additional Evidence, Exh. 6 at 10-11). Having failed to make out a prima facie case on the issue of occupancy dates, Bayside's request to take additional evidence on this issue fails.

For all of the reasons set forth above, Bayside's motion to take additional evidence on (1) the adequacy of the administrative appeal conducted by BGS; (2) the failure of Jetport to demonstrate an ownership interest in the parcel where the proposed office building is to be located; (3) the failure of Jetport to demonstrate legal access to the proposed site; (4) the scoring on the location of the proposed site; and (5) Jetport's inability to comply with the occupancy deadline of February 2015, fails and Bayside's request to take additional evidence is denied.

The entry is:

Petitioner's motions to remand and to take additional evidence are DENIED.

Date: March 24, 2014

Joyce A. Wheeler
Justice, Superior Court

12

Petitioners-David Sherman Esq
Respondent Dept of Admin and Financial Svcs and
 Bureau-William Laubenstein AAG
Respondent Jetport State Building LLC-David Perkins
 Esq and Matthew Harvey Esq