# United States Court of Appeals
## For the First Circuit

Nos. 18-2073
    18-2163

DAVID GIGUERE, on his own behalf and on behalf of all others
similarly situated,

Plaintiff, Appellee/Cross-Appellant,

KELLON ALEXIS; SYLVIA OUELLETTE; LINDA PERRY; LEE SOUTHWICK;
KIMBERLY FARRELL; MARY FEELEY; LINDSAY GAGNE; JERRY GARCIA;
CRYSTAL JACKMAN; RYAN JARRELL; RENEE JORDAN; CHRISTINE POORE;
BRIE GAIA REED; NEVERLY RUDA; ZU-CHYUN SPEAKER;
RENOVAT BARAGENGANA; ROBERT BISSELL; THERESA BISSELL; LONG CAO;
DARREN CHEVRIER; KENNETH COLE; CYNTHIA COOKINGHAM;
SUSAN DESJARDINS; JOHN FARRELL; ROBERT BROGDEN; DEBRA DOW;
PAIGE HARRIS; SUSAN MACDONALD; ERIC NKURUNZIZA;
EULADE NKURUNZIZA,

Plaintiffs,

v.

PORT RESOURCES INC.,

Defendant, Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Lynch, Kayatta, and Barron,
Circuit Judges.

Timothy H. Norton, with whom Graydon G. Stevens and Kelly,
Remmel & Zimmerman were on brief, for Port Resources, Inc.

Peter Mancuso, with whom Andrew Schmidt and Andrew Schmidt Law PLLC were on brief, for David Giguere.

————————————————

June 19, 2019

————————————————

**LYNCH**, **Circuit Judge**.  The Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., sets federal minimum-wage, maximum-hour, and overtime guarantees.  When an employer fails to meet these requirements, the FLSA gives employees a private right of action to recover their due.  Id. § 216(b).

These cross-appeals come from an action, brought as an FLSA collective action and as an individual action under analogous Maine labor laws, to recover what are alleged to be unpaid overtime wages.  The employer, defendant Port Resources, disputes that such wages are owed.  Under its sleep-time policy, Port Resources did not pay employees like plaintiff David Giguere for eight hours each night, even though the employees were on duty during that time.

The district court found that this policy was unlawful, Giguere v. Port Res., Inc. (Giguere I), No. 16-CV-58-NT, 2018 WL 1997754, at *10 (D. Me. Apr. 27, 2018), and so awarded back wages to the collective-action plaintiffs and treble damages to Giguere, Giguere v. Port Res., Inc. (Giguere II), No. 16-CV-58-NT, 2018 WL 5268600, at *5 (D. Me. Oct. 23, 2018).

Finding no error in the district court's carefully reasoned opinions, we affirm.

I.

A.

Port Resources is a nonprofit organization that runs group homes (which it calls "programs") that provide housing and services to adults with developmental disabilities and behavioral health challenges. It uses a long-term-staff model to care for program clients. Its long-term staff provide daily living skills development, administer medication, and assist with personal care and community integration. And, true to that name, long-term staff work long shifts -- seven days on and seven days off, from Thursday to Thursday. One set of long-term staff alternates with another assigned to the same residence. Twenty Port Resources programs have this setup, and eleven of those twenty also have "overnight awake staff" responsible for attending to clients during the night, as necessary.

A long-term staff's weeklong shift includes four four-hour unpaid breaks and eight hours of nightly unpaid sleep time. This sleep-time arrangement is governed by a written "Sleep Time Agreement," which provides in full:

> This confirms the agreement between Port Resources and a Direct Support Professional who may be assigned to be on duty for one or more twenty-four (24) [hour] shifts.
>
> Under wage and hour guidelines, 29 C.F.R. sections 785.22[1] and 785.23, where an employee

---

[1] Though Port Resources cites section 785.22, in this litigation it has "affirmatively conceded that it is not relying

- 4 -

is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude from hours worked a bona fide meal period and a bona fide regularly scheduled sleeping period of not more than 8 hours, provided that adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep.

If the sleeping period is interrupted by a call to duty, the interruption will be counted as hours worked.  If the employee cannot get at least 5 hours' sleep during the scheduled sleep period, the entire time should be treated as working time.  The eight-hour sleeping period will be excluded from hours worked unless performance of work duties is required.

If the Direct Support Professional does have to work during the sleep period, they should record their time worked on the daily service charts and notify their Program Manager of the interruption so that their electronic time sheet can be corrected.

If anyone has any questions, please feel free to contact the Director of Human Resources.

It remains contested how often long-term staff must attend to the program clients during scheduled sleep time.

Port Resources has chosen to compute its payroll workweek from Sunday to Sunday, so each long-term-staff shift spans two payroll workweeks.  This means that Port Resources pays long-term staff for forty hours of work during their first payroll workweek (Thursday to Saturday) and for fifty-six hours of work

_____

on [section] 785.22 to support its sleep policy."  Giguere I, 2018 WL 1997754, at *9 n.12.

- 5 -

during their second (Sunday to Thursday).  Port Resources does not pay its long-term staff for their fifty-six hours of sleep time (Thursday to Thursday).

### B.

David Giguere, a former Port Resources employee, sued Port Resources, alleging that its sleep-time policy violated the FLSA; the Maine Wages and Medium of Payment Act (the Wages Act), Me. Stat. tit. 26, §§ 621-A, 626-A, 629; and the Maine Minimum Wage Law, id. §§ 663, 664, 670.[2]

The district court conditionally granted collective action status for the FLSA claim, and thirty individual employees besides Giguere opted in.  Giguere brought his Maine claims only on his own behalf.[3]

Both parties moved for summary judgment, which the district court granted to Giguere and the other collective-action plaintiffs on the FLSA claim and to Giguere on his two Maine law counts.[4]  Giguere I, 2018 WL 1997754, at *10.  The district court

---

[2]    Giguere also brought, but then voluntarily withdrew, a claim for alleged breach of contract and unjust enrichment.

[3]    To be more precise, Giguere at first sought class action status for his Maine law counts, but later voluntarily abandoned that request.

[4]    The district court then held a bench trial to determine whether Port Resources could establish a good-faith defense to liquidated damages under the FLSA.  The district court found that Port Resources had acted in good faith and the parties stipulated to the back wages owed each plaintiff.

then awarded Giguere treble damages under the Wages Act.  Giguere II, 2018 WL 5268600, at *5.

Both parties appealed.

## II.

We review the district court's summary judgment rulings de novo.  Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 223 (1st Cir. 2013).  And because the parties filed cross-motions for summary judgment, we "view each motion separately, drawing all inferences in favor of the nonmoving party."  Fadili v. Deutsche Bank Nat. Tr. Co., 772 F.3d 951, 953 (1st Cir. 2014).

## A.

Port Resources argues that the district court erred in concluding that it had violated the FLSA by not compensating its long-term staff for their sleep time.  We find no such error, so we affirm.

We begin with background.  The FLSA's usual rule is that an employer must pay an employee for all time the employee is required to spend at a worksite, even sleep time.  See 29 C.F.R. § 785.7 ("The workweek ordinarily includes 'all the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place.'"  (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 690-91 (1946))).  But the Department of Labor's (DOL) regulations also provide that

- 7 -

if "certain conditions" are met, an employer may carve worksite sleep time out of an employee's hours worked.  Id. § 785.20.[5]

Port Resources relies on one such sleep-time regulation: 29 C.F.R. § 785.23, which covers "live-in" employees.  If such an employee "resides on his employer's premises on a permanent basis or for extended periods of time," he and the employer may enter into "any reasonable agreement" about payment for sleep time.  Id.

No one claims this regulation is unambiguous.  Aware of confusion about the regulation, DOL interpreted the term "extended periods of time" in a 1988 enforcement memorandum.  That memorandum stated that an employee meets the extended-periods-of-time standard when, as relevant here, he "resides on the premises for a period of at least 120 hours in a workweek."  U.S. Dep't of Labor, Wage & Hour Div., Enforcement Policy, (June 30, 1988), 1988 WL 614199, at *2  (emphasis added).  The memorandum defined "workweek" as "seven consecutive 24-hour periods," citing 29 C.F.R. § 778.105, id., which provides that an employee's workweek "need not coincide with the calendar week," but once the employer has established when the workweek begins, the workweek's span

---

[5]     Section 785.20 states:  "Under certain conditions an employee is considered to be working even though some of his time is spent in sleeping or in certain other activities."  Though this might be read to imply that sleep time is generally not counted as hours worked, context shows the opposite.  In immediately following sections, DOL carefully delineates when an employer may exclude worksite sleep time from an employee's hours worked.

"remains fixed regardless of the schedule of hours worked by [the employee]," 29 C.F.R. § 778.105.

Port Resources concedes that it "established" a Sunday-to-Sunday workweek for payroll purposes. And it makes no attempt to show that its long-term staff reside on its premises for 120 hours within that payroll workweek.

Port Resources instead argues that DOL did not in its memorandum intend to make the workweek the baseline for determining whether an employee resided on the employer's premises for "extended periods of time." This argument turns on the text of DOL's 1988 memorandum, so we quote that memorandum's key language in full:

> Under circumstances where an employee does not maintain his or her permanent residence on the premises and does not otherwise reside on the premises 7 days a week, [DOL's Wage and Hour Division (WH)] will consider an employee who sleeps in private quarters, in a homelike environment, to reside on the premises for an extended period of time within the meaning of [section] 785.23 if the employee resides on the premises for a period of at least 120 hours in a workweek.
>
> WH is refining and restating the minimum conditions required to meet this rule. An employee will be found to reside on the premises for extended periods of time if:
>
>> (1) the employee is on duty at the group home and is compensated for at least eight hours in each of five consecutive 24-hour periods; and
>>
>> (2) the employee sleeps on the premises for all sleep periods between the

- 9 -

> beginning and end of this 120-hour period.

1988 WL 614199, at *2. Port Resources argues that after laying out its 120-hours-in-a-workweek standard, DOL then "refin[ed] and restat[ed] the minimum conditions required to meet this rule" without any mention of the term "workweek." Port Resources then attempts to bolster this argument with opinion letters, interpretations, and bulletins spanning the three decades since DOL's 1988 memorandum.

While the question is not free from doubt (and further clarification from DOL may be warranted[6]), we think Giguere has the better reading of DOL's memorandum. First, nothing in the language Port Resources relies on repudiates the DOL's statement that the extended-periods-of-time standard requires "reside[nce] on the [employer's] premises for a period of at least 120 hours in a workweek." The language Port Resources relies on follows directly after that statement. So Port Resources' argument is that DOL announced a workweek-based rule in one breath and then disclaimed it in the next. The better reading of the language

---

[6]    We note that neither party sought guidance from DOL on this issue. See 29 C.F.R. § 785.1 (noting that "[i]f doubt arises" in "determining what constitutes working time" under DOL's regulations, the party in doubt should send "inquiries" to DOL). And neither party has asked that we seek guidance from DOL. So, preferring not to further delay resolution of this case, we will proceed without seeking such clarification.

- 10 -

Port Resources relies on is that it is what it says it is: a refinement of "this rule" -- that is, DOL's workweek-based rule.

Second, the 1988 memorandum has not been superseded. It remains the most comprehensive of DOL's analyses of section 785.23. And DOL's later documents do not deviate from its analysis; rather, they continue to reference the 1988 memorandum. DOL has, as recently as 2014, referred to the 1988 memorandum in interpreting section 785.23. See U.S. Dep't of Labor, Wage & Hour Div., Administrator's Interpretation No. 2014-1 (Mar. 27, 2014), 2014 WL 1276986 at *12 n.22.

And third, Port Resources' argument requires us to assume that DOL did not "consciously" establish the workweek standard. But DOL not only used the term "workweek," it also noted that "workweek" and several terms like it "ha[d] caused some difficulty." 1988 WL 614199, at *2. It then listed those terms and "defined [them] for further guidance." Id. And its definition of "workweek" referred to an already promulgated regulation: 29 C.F.R. § 778.105. This careful attention belies Port Resources' argument.

We conclude that the better reading of DOL's memorandum is that the agency analyzes section 785.23 with reference to an employer's workweek. The question then becomes one of deference. The parties dispute whether the rubric of Auer v. Robbins, 519 U.S. 452 (1997), or Skidmore v. Swift & Co., 323 U.S. 134 (1944),

- 11 -

applies. We need not address this issue because, even were we to agree with Port Resources that Skidmore, not Auer, applies, we see no reason to depart from DOL's understanding of its own regulation. Cf. Fawcett v. Citizens Bank, N.A., 919 F.3d 133, 138 (1st Cir. 2019). DOL set forth its interpretation of section 785.23 in an enforcement memorandum. And as the Supreme Court has cautioned, "[g]ood administration of the [FLSA] and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons." Skidmore, 323 U.S. at 140. Port Resources points to no such "very good reasons" here.

Port Resources argues that a fixed workweek standard goes against the principle that an employee's work schedule need not coincide with his payroll workweek. But that principle does not carry the day. The question is not whether Port Resources can structure its employees' shifts to, for instance, minimize its overtime obligations, but whether those employees reside on Port Resources' premises for "extended periods of time." And under the most likely reading of DOL's interpretation, the employees do not.

Port Resources' remaining argument is that implementing a workweek standard is arbitrary. We think not. The workweek is the "basic unit" of the FLSA. O'Brien v. Town of Agawam, 350 F.3d 279, 298 (1st Cir. 2003); see 29 U.S.C. § 207(a)(1); cf. 29 C.F.R.

§ 776.4(a) ("The workweek is to be taken as the standard in determining the applicability of the Act."). There is nothing arbitrary about using the FLSA's "basic unit" of time in interpreting the phrase "extended periods of time."

Measuring "extended periods of time" with reference to the workweek "established" under section 778.105 also makes sense within DOL's regulatory scheme. The agency has instructed that the FLSA "takes a single workweek as its standard." 29 C.F.R. § 778.104. From this we conclude that the workweek the employer has chosen is the workweek the employer has chosen.[7]

We are also mindful of the interpretive rule that ambiguities in the exceptions to the FLSA's general rules should be resolved in favor of employees. See Cash v. Cycle Craft Co., 508 F.3d 680, 683 (1st Cir. 2007) (noting that the FLSA's remedial nature "'requires that [its] exemptions be narrowly construed against the employers seeking to assert them' and 'limited to those establishments plainly and unmistakably within [the exemptions'] terms and spirit.'" (alterations in original) (quoting Reich v. John Alden Life Ins. Co., 126 F.3d 1, 7 (1st Cir. 1997))); cf.

---

[7] Port Resources can set the start of its workweek to minimize its overtime obligations. See Abshire v. Redland Energy Servs., LLC, 695 F.3d 792, 795-96 (8th Cir. 2012); Johnson v. Heckmann Water Res. (CVR), Inc., 758 F.3d 627, 633 (5th Cir. 2014). And it can set the start of its week to minimize its sleep-time-payment obligations. But, having made its choice, Port Resources cannot now complain that it is unfair to hold it to it.

O'Connor v. Oakhurst Dairy, 851 F.3d 69, 79 (1st Cir. 2017) (noting a parallel "default rule of construction under Maine law"). The FLSA was designed to protect workers "from 'the evil of overwork as well as underpay.'" Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (internal quotation marks omitted) (quoting Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 578 (1942)). Section 785.23 advances that purpose by carefully distinguishing between "live-in" employees, who are essentially at home on the employer's premises, and nonresidential employees, who are not. And DOL's interpretation of that regulation, as we have construed it, provides a useful frame of reference -- the workweek -- to analyze that distinction.

Applying that interpretation, we hold that Port Resources has not carried the burden necessary to invoke section 785.23. We affirm the district court's finding that Port Resources' sleep-time policy violated the FLSA.

B.

The remaining issues arise under Maine law and relate only to the district court's damages award, not its liability determination.[8] The district court held that Port Resources had

---

[8] The district court found that "Maine [wa]s likely to follow federal law" on sleep time. Giguere I, 2018 WL 1997754, at *10; see TerMorshuizen v. Spurwink Servs., Inc., Cum-18-288, 2019 WL 2181252, at *3 (Me. May 21, 2019). So, because it had granted summary judgment to Giguere on his FLSA claim, the district court "f[ound] that summary judgment for Giguere [wa]s also appropriate

violated both the Wages Act and the Minimum Wage Law.  Giguere I, 2018 WL 1997754, at *10.  It awarded Giguere treble damages under the Wages Act but did not also award him double damages under the Minimum Wage law, concluding that Maine's rule against double recovery precluded the second, smaller damage award.  Giguere II, 2018 WL 5268600, at *4.

Both parties argue that the district court erred: Giguere argues that he has a right to recover under both the Wages Act and the Minimum Wage law.  And Port Resources argues that he is only entitled to recovery under the Minimum Wage Law.  We reject both arguments in turn.

Maine law provides that a plaintiff may not receive two damages awards for the same loss.  Theriault v. Swan, 558 A.2d 369, 372 (Me. 1989).  A potential exception to this no-double-recovery rule arises when the two damages awards serve different purposes; that is, when one is remedial and the other is punitive.  See, e.g., St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1204 (11th Cir. 2009).  Both parties agree that the

_____

on [his] Maine law claims."  Giguere I, 2018 WL 1997754, at *10. Port Resources says that if we reverse the district court's FLSA judgment we should overturn its conclusion that Port Resources also violated Maine law.  Giguere, in turn, argues that we can affirm the district court's judgment that Port Resources violated Maine law even if we reverse its judgment that Port Resources violated the FLSA.  Since we have affirmed the district court's FLSA determination, we affirm on the Maine law count without addressing either party's argument.

damages for Port Resources' violations of the Minimum Wage Law are remedial, so the question on appeal is whether the penalties for violating the Wages Act are punitive, so as to require two payments.

The Maine Supreme Judicial Court has strongly suggested that the Wages Act's purpose is remedial. See Bisbing v. Me. Med. Ctr., 820 A.2d 582, 584-85 (Me. 2003) (awarding the plaintiff appellate attorneys' fees under the Wages Act, as the Court had done "under other remedial statutes," id. at 585, and referencing the statute's "broadly protective purpose," id. at 584). Maine Wages Act violations entitle a plaintiff to unpaid wages plus "an additional amount equal to twice the amount of unpaid wages as liquidated damages." Me. Stat. tit. 26, § 626-A; see Cooper v. Springfield Terminal Ry. Co., 635 A.2d 952, 955 (Me. 1993). In Maine, such statutory treble damages provisions are generally considered remedial rather than punitive in nature. Andrew M. Horton & Peggy L. McGehee, Maine Civil Remedies 77 & n.132 (4th ed. 2004) (citing Michaud v. City of Bangor, 203 A.2d 687 (Me. 1964)). So we conclude, as did the district court, that Maine courts would likely view any damages for Port Resources' Wages Act violation to be remedial. And because both of Giguere's available damages awards had a remedial purpose, the district court properly awarded him only one.

Port Resources argues that the district court picked the wrong one. It argues that the district court should not have awarded Giguere treble damages under the Wages Act because nearly all Giguere's unpaid sleep hours were overtime. The Minimum Wage Law grants the right to overtime pay, so Port Resources argues that double damages under that law was the proper remedy.

This argument rests on the canon against superfluity. Most Minimum Wage Law violations, Port Resources argues, will also violate the Wages Act. And because the Wages Act provides the greater remedy -- treble damages -- plaintiffs will always choose that award. So to avoid making the Minimum Wage Law's double-damages remedy superfluous, we should not allow recovery under the Wages Act for overtime violations.

There are at least two problems with this argument. First, Giguere is entitled to recovery under the Wages Act. So to hold that he cannot recover his due, we would have to create an exception to recovery under that Act. But the Wages Act provides that any employer who violates its provisions "is liable." Me. Stat. tit. 26, § 626-A. It does not say "is liable unless the unpaid wages are for overtime." We see no reason to depart from the Wages Act's unambiguous language. See Gould v. A-1 Auto, Inc., 945 A.2d 1225, 1229 (Me. 2008).

And second, the argument fails on its own terms. Under the Wages Act, an employer cannot require, or even permit, an

- 17 -

employee "to work without monetary compensation." Me. Stat. tit. 26, § 629(1). The Minimum Wage Law, by contrast, provides that "[a]n employer may not require an employee to work more than 40 hours in any one week unless [1.5] times the regular hourly rate is paid for all hours actually worked in excess of 40 hours in that week." Id. § 664(3). The two laws target different concerns: The Wages Act provides a remedy for unpaid work, while the Minimum Wage Law provides a remedy for underpaid work. And because this is the case, Port Resources' superfluity argument is meritless.

The district court properly awarded Giguere treble damages as a remedy for Port Resources' Wages Act violation.

## III.

We affirm. Costs are awarded to Giguere.